**Tana J. WAID, Plaintiff–Appellant,**

v.

**MERRILL AREA PUBLIC SCHOOLS, Dr. Strand Wedul and James Boettcher, Defendants–Appellees.**

No. 95–2201.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1995.

Decided July 29, 1996.

Michael R. Fox (argued) Fox & Fox, Madison, WI, for plaintiff–appellant.

Linda Stover Isnard, Gilbert J. Berthelsen (argued), Capwell and Berthelsen, Racine, WI, and David R. Friedman, Friedman Law Firm, Madison, WI, for defendants–appellees.

Before LAY*, CUDAHY and KANNE Circuit Judges.

CUDAHY, Circuit Judge.

This case requires us to determine how general principles of judicial economy and orderly procedure should govern the course of litigation involving overlapping sets of federal and state civil rights. Believing that a Wisconsin public school had denied her a job because of her sex, Tana Waid brought an employment discrimination claim with a state agency charged with the exclusive power to enforce Wisconsin's fair employment law. The agency ruled in her favor and granted her all of the remedies available under state law. These remedies are extensive, but they are not entirely coextensive with all of the remedies that federal law could theoretically have provided in her case. Seeking these additional remedies, she filed a lawsuit in the district court. The district court granted summary judgment for the defendants, concluding that Waid's pursuit of administrative relief under state law prevented her from pursuing any of her federal claims. We affirm in part and reverse in part.

## I.

In the fall of 1990, Merrill Area Public Schools (MAPS) hired Tana Waid as a long-term substitute teacher for its junior high school. Within a few weeks of her appointment, a member of the junior high school faculty died, and Waid took over his duties for the remainder of the school year. During the summer of 1991, MAPS sought a permanent replacement for the deceased teacher. Dr. Strand Wedul, principal of the junior high school, and James Boettcher, director of curriculum for MAPS, interviewed

* The Hon. Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

candidates for the position, including Waid. Acting on their recommendation, MAPS' superintendent hired Richard Bonnell for the position despite the fact that Waid had earlier been selected over Bonnell for the substitute teacher position.

Wisconsin's Fair Employment Act prohibits discrimination in employment on the basis of sex, and it provides that the victim of discrimination can be awarded a job, receive back pay, front pay and attorneys' fees. *See Watkins v. Labor & Indus. Review Comm'n,* 117 Wis.2d 753, 345 N.W.2d 482, 487 (1984). The state's Department of Industry, Labor and Human Relations is charged with enforcing the Fair Employment Act, and it provides administrative adjudication to those with claims under the Act. *See* Wis.Stats. §§ 111.375, 111.39. In July 1991, Waid filed a claim with the Equal Rights Division of the Department, alleging that MAPS had denied her the full-time position because of her sex. In March 1994, after a full hearing in which both parties had legal representation, the agency issued a written finding that MAPS had discriminated against Waid. It ordered that MAPS give Waid the next available position for which she was qualified and that it pay her the sum that she would have earned as a full-time teacher between the beginning of the 1991–92 school year and the date of her eventual appointment, plus 12 percent interest and less actual · earnings from other employment. It also ordered MAPS to pay Waid's attorneys' fees and costs of $12,327.73.

In June 1994, Waid filed a lawsuit in the district court. Her amended complaint alleged that MAPS had violated Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*, which, among other things, prohibits schools that receive federal funds from engaging in intentional discrimination in employment. She also brought claims against Wedul and Boettcher as individuals, alleging that they had, under color of state law, deprived her of her rights under the Equal Protection Clause of the Fourteenth Amendment by intentionally discriminating against her. As relief for both claims, she sought punitive damages and compensatory damages for pain and suffering. After

some discovery, the school and the individual defendants moved for summary judgment, arguing that the doctrines of issue and claim preclusion barred all of Waid's claims. At this point, Waid also moved for partial summary judgment on the issue of discrimination as to each claim. She contended that the judgment of the Equal Rights Division operated, under the doctrine of issue preclusion, to prevent relitigation of this factual question. The district court denied Waid's motion and entered summary judgment for MAPS, Wedul and Boettcher.

## II.

Our review of the district court's ruling is complicated by the fact that the legal grounds for that ruling, as stated in the district court's opinion, are not entirely clear. The essence of the holding seems to be that Waid's choice of a state administrative forum was, in effect, an election of remedies and that her success in that forum precluded her pursuit of compensatory and punitive damages under federal law in federal court. In one respect, the district court seemed to conclude that the availability of one remedy for employment discrimination may preempt or exclude the pursuit of others. But the district court described this holding in terms of issue preclusion doctrine, and its reasoning and case citations suggest that it may also have focused primarily on the doctrine of claim preclusion.

Regardless of the district court's own rationalization of its result, its decision relates primarily to the principles of preemption and preclusion. Although the parties have argued this case exclusively in terms of preclusion, we are compelled to address issues of preemption as well. We do this for two reasons. First, the district court's reasoning points to preemption, albeit indirectly. Second, and more importantly, the issue of preemption affects the subject matter jurisdiction of the district court, an issue that is always open to our consideration. *Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 179 (7th Cir.1994). All of these issues present legal questions that we review *de novo. United Transp. Union v. Gateway Western Ry. Co.,* 78 F.3d 1208, 1212 (7th Cir.1996).

A.

Waid's case implicated a variety of different but closely related rights and remedial mechanisms, and the district court's opinion raises questions about the relationship among them. Each of these rights could conceivably serve as the foundation for a cause of action and a prayer for relief; but when rights and their attendant remedies overlap, a cause of action under one may preempt the pursuit of a cause of action under another. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). We must therefore examine the relationship among the statutes relating to Waid's case in order to determine whether any of her claims preempted another.

We encounter an extensive catalog of rights and remedies that may cover the conduct at issue here. Wisconsin law provided a statutory right against sex discrimination in employment; and it provided a remedial scheme for that state law right. Through Title VII, the United States provides a parallel statutory right and a parallel remedial scheme. Moreover, Title VII requires that the pursuit of the remedies available in an administrative forum is a condition precedent to pursuing the rights that it created in a court. The Equal Employment Opportunity Commission (EEOC) may provide this administrative forum, but, if a state agency stands as the local equivalent of the EEOC, a plaintiff with Title VII claims may have to first seek relief from state administrators who act under state law. Title VII thus reserves its remedial scheme for the victims of employment discrimination who cannot obtain complete redress for their injuries in an administrative forum, whether the agency providing administrative redress is a creature of state or of the federal government. *See* 42 U.S.C. § 2000e–5; *see also Perkins v. Silverstein*, 939 F.2d 463 (7th Cir.1991).

Federal law includes even more rights and remedies. It provides an additional right to be free from *intentional* discrimination by government entities and officials. This right is available to all citizens through the constitutional principles of equal protection. *See Tucker v. United States Dept. of Commerce,*

958 F.2d 1411, 1413 (7th Cir.), *cert. denied,* 506 U.S. 953, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992). This right may, of course, be vindicated through § 1983, which makes all remedies available, including compensatory and punitive damages. As an employee of an educational institution that received federal funds, Waid had a statutory right under Title IX that was essentially identical to her constitutional rights against intentional discrimination. *See North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 530–31, 102 S.Ct. 1912, 1922–23, 72 L.Ed.2d 299 (1982). Title IX also provided a private right of action and extensive remedies. *See Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (holding that Congress created a private right of action under Title IX); *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (holding that Congress did not intend to limit the range of remedies available under Title IX).

■ The Supreme Court has indicated that courts should hesitate before concluding that different statutory schemes provide parallel paths from a particular injury to a particular form of relief. The Court has held that, if Congress intended that one of the statutory schemes should be the exclusive way to vindicate a right, then plaintiffs are required to sue only under that statute. *See Great American Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) (holding that Title VII of the Civil Rights Act of 1964 preempted a cause of action for employment discrimination under 42 U.S.C. § 1985(3)). When Congress creates a comprehensive statutory scheme for protecting a right, it may impliedly express the intention that this scheme should be exclusive. *Id.* at 372–78, 99 S.Ct. at 2349–52; *see also Middlesex Cty. Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) ("[w]hen remedial devices provided in a particular [a]ct are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983").

■ Of course, Title VII provides a comprehensive statutory scheme for protect-

ing rights against discrimination in employment. We must first identify the rights and remedies that it preempts. It is well-established that Title VII's own remedial mechanisms are the only ones available to protect the rights created by Title VII. *See Novotny,* 442 U.S. at 372–78, 99 S.Ct. at 2349–52. For Waid's claim, which arose in July, 1991, before the enactment of the amendments to Title VII in the Civil Rights Act of 1991, Title VII provided equitable remedies, but not compensatory or punitive damages. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Therefore, Title VII preempted any of Waid's claims for equitable relief under § 1983 or Title IX. *See Sea Clammers,* 453 U.S. at 20, 101 S.Ct. at 2626–27; *see also Lakoski v. James,* 66 F.3d 751 (5th Cir.1995); *Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427,* 893 F.Supp. 808, 814–15 (N.D.Ill.1995). Title VII provided the only way by which Waid could obtain make-whole relief. As we have noted, Waid's successful pursuit of her claim under Wisconsin law effectively satisfied any claims that she might have had under Title VII.

■ We must next consider whether Title VII's remedial mechanisms preempted *all* claims against MAPS under Title IX and *all* claims against Wedul and Boettcher under § 1983. The district court seemed to presume that they did. As we have noted, Title VII did preempt some of those claims, specifically any claim for equitable relief. But Waid had a claim that she was the victim of *intentional* discrimination, and we have previously held that Title VII does not preempt a cause of action for intentional discrimination in violation of the Constitution. *Trigg v. Fort Wayne Community Schs.,* 766 F.2d 299, 300–01 (7th Cir.1985). In *Trigg,* we noted that the legislative history of Title VII clearly indicated that Congress did not intend to preempt claims, under the Fourteenth Amendment and § 1983, that state officials intentionally discriminated against state employees. Title VII therefore did not preempt Waid from bringing a claim of intentional discrimination against a defendant or defendants.

■ This leads us to consider whether she could have properly brought claims against both MAPS and its officials. In other words, we must consider the relationship between § 1983 and Title IX. Both statutes prohibit the same kind of conduct and provide compensatory and punitive damages as remedies for that conduct. *Sea Clammers* holds that this sort of overlap is intolerable. Consequently we must decide whether Waid's claim under Title IX preempts her claim under § 1983 or vice versa. This is a matter of first impression in our circuit, but the Third Circuit has considered the application of the *Sea Clammers* doctrine to cases involving parallel claims under Title IX and § 1983. In *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779, 789 (3d Cir.1990), that court concluded that constitutional claims asserted under § 1983 are subsumed under Title IX. Therefore, a plaintiff may not claim that a single set of facts leads to causes of action under both Title IX and § 1983. *Id.* In particular, a plaintiff may not claim that an instance of intentional discrimination simultaneously creates causes of action under Title IX and under § 1983 and the Equal Protection Clause of the Fourteenth Amendment; the availability of a Title IX claim precludes the pursuit of a § 1983 claim. *Williams v. School Dist. of Bethlehem, Pa.,* 998 F.2d 168, 176 (3d Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994).

The Third Circuit's approach to this question is persuasive, and we will follow it. By enacting Title IX, Congress created a strong incentive for schools to adopt policies that protect federal civil rights. If educational institutions do not adequately safeguard the civil rights of their students and employees, Title IX provides that they may lose the funds supplied by a myriad of federal agencies. The creation of this incentive indicates that Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, not on the individual officials associated with those institutions. In other words, Congress expects educational institutions to establish policies that diminish or eliminate the occasion for discrimination by its officers. This indication is strengthened by the fact that Title IX

gives plaintiffs access to the full panoply of judicial remedies. The provision of these remedies suggests that Congress saw Title IX as the device for redressing any grievance arising from a violation of federal civil rights by an educational institution. Through the establishment of this statutory regime, Congress effectively superseded a cause of action under § 1983 that was based on constitutional principles of equal protection. We therefore conclude that Waid's Title IX claim against MAPS preempts her claim against Wedul and Boettcher. Although we may be unclear about its reasons, the district court correctly ruled that Waid could not maintain her claim against the individual defendants.

To find relief for the injury to her civil rights, Tana Waid had to unravel a maze of federal and state statutes. As the preceding discussion demonstrates, preemption doctrine traces the path. That path began with the pursuit of make-whole relief provided by Title VII (as it stood before the Civil Rights Act of 1991) and the Wisconsin Fair Employment Act, two statutes that prohibited simple discrimination. The path could be followed to permit the pursuit of compensatory and punitive damages, which are available for instances of intentional discrimination. At first glance, Title IX and § 1983 might seem to provide parallel tracks to this relief, but, upon closer examination, we can see that Congress closed the avenue created by § 1983 to all plaintiffs who could follow the way created by Title IX.

### B.

Having dealt with matters of preemption, we now turn to matters of preclusion. Preclusion doctrine pertains to the effect that adjudication in one forum may have on adjudication in others. With respect to this case, preclusion doctrine raises some questions that affect whether and how Waid's Title IX claim may proceed in the district court. Does Waid's successful pursuit of her state law rights in an administrative tribunal preclude her from going to federal court to pursue her rights under Title IX? If we determine that Waid's federal lawsuit is not precluded, we must decide a further question. Does the administrative tribunal's fact-

finding with respect to the issue of discrimination preclude the relitigation of that issue?

Because the doctrines of issue and claim preclusion are often confused, and, indeed, were confused in this case, we begin our analysis with their definitions. Issue and claim preclusion are both aspects of the more general doctrine of *res judicata*. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). As the Supreme Court has noted:

[i]ssue preclusion refers to the effect of a judgment in foreclosing the relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Id.* (citations omitted). "Merger" and "bar" have special meaning in the lexicon of *res judicata.* "Merger" expresses the idea that, when a plaintiff prevails in a lawsuit arising from a particular transaction, all of the claims that the plaintiff did raise or could have raised merge into the judgment in her favor. If the plaintiff attempts to litigate any of those claims again, the judgment itself will actually serve as a defense. "Bar" refers to the companion idea that a judgment for a defendant in a lawsuit bars the plaintiff from litigating any of the claims that she did bring or could have brought in that suit. Restatement (Second) of Judgments § 24 (1982) (discussing "merger" and "bar" as aspects of claim preclusion).

Federal law requires a district court to give preclusive effect to the judgments of other tribunals. Federal common law is the original source of the rules of *res judicata* for the federal courts. *See Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991). Congress may preempt the common law by passing statutes that define the operation of *res judicata* in particular contexts. It may do this by passing statutes that determine the preclusive effect of the decisions of

certain tribunals. For example, Congress has preempted the common law with respect to state court judgments by passing the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires the federal courts to rely on state law to determine the preclusive effect of judgments of the courts of that state. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985). Congress may also establish specific rules of preclusion with respect to certain federal rights. When Congress creates federal rights by statute-making, it may establish special preclusion rules for them. If it determines that these rights are especially important, Congress may provide that the decisions of certain tribunals will not preclude the federal courts from hearing claims or finding facts with respect to those rights. *See University of Tennessee v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 3224–25, 92 L.Ed.2d 635 (1986). In the absence of specific legislation, of course, federal common law prevails.[1] *See Astoria,* 501 U.S. at 108, 111 S.Ct. at 2169–70.

 Federal common law does provide the rules of claim and issue preclusion here. No federal statute defines the preclusive effect of the unreviewed decisions of state administrative agencies.[2] *Elliott,* 478 U.S. at 794–95, 106 S.Ct. at 3223–24. Similarly, Title IX does not disclose any specific congressional intent about how federal courts should treat unreviewed decisions by a state agency that pertain to a lawsuit under Title IX. To be sure, Title IX does contemplate that federal administrative agencies will make decisions about a school's compliance with the federal law of employment discrimination. *See* 20 U.S.C. § 1682. But these agency decisions will pertain to whether the school should continue to receive federal funds; they will not necessarily address any questions about whether a particular individual

has or has not been the subject of intentional discrimination. And the Supreme Court has suggested that this administrative process is substantially different from (although not inconsistent with) the judicial process pertaining to individual rights under Title IX. *See Cannon,* 441 U.S. at 706–08, 99 S.Ct. at 1962–64. As such, there is no reason to think that the administrative process should entail special rules of *res judicata* for lawsuits in which individuals assert their own Title IX rights. In the absence of any specific legislative instruction, the federal common law of claim and issue preclusion will apply.

1.

 With respect to claim preclusion, the first question is whether Waid's choice to bring claims in a state administrative forum that could not consider Title IX claims precludes her from raising those claims in a judicial forum. The federal common law depends upon widely recognized principles that are essentially expressed in the Restatement (Second) of Judgments. *See Marrese,* 470 U.S. at 382–83, 105 S.Ct. at 1332–33 (indicating that the Restatement captures the broad contours of the federal common law of claim preclusion); *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (discussing federal rules of *res judicata* generally).

In general, these principles require plaintiffs to assert their claims initially in the forum with the broadest possible jurisdiction. *See* Restatement (Second) of Judgments at §§ 24, 25. This method of procedure allows plaintiffs to resolve, in one adjudication, the maximum number of claims that arise from a set of events. If a plaintiff has a collection of claims that arise from one set of events and has an unconstrained choice between a forum of limited jurisdiction and a forum of broad jurisdiction, a decision to proceed in the more limited forum precludes her from bringing

1. Even when Congress has enacted statutes clearly defining rules of preclusion for the federal courts, the courts may, nevertheless, sometimes find exceptions to those rules. The courts are extremely reluctant to find such exceptions, but, when they do, the federal common law of preclusion typically fills the gap in the statute. *See Marrese,* 470 U.S. at 383, 105 S.Ct. at 1333.

2. When the decision of a state administrative agency receives judicial review by a state court, it becomes the judgment of a court and is subject to the Full Faith and Credit Act.

the unlitigated claims in a subsequent proceeding. *Id.* at §§ 24, 25 cmt. e. Consider a hypothetical case in which a plaintiff has causes of action for unfair competition under state law and for trademark infringement under federal law. If this plaintiff brought a state court action for the unfair competition claim, he or she could not subsequently start a lawsuit in federal court on the basis of federal trademark law. The federal claims could have been brought in the state court along with the state claims; or the state claims could have been brought in federal court along with the federal claims under the federal court's supplemental jurisdiction. *See id.* at § 25, cmt. e, illus. 11.

This preclusion occurs, however, only if the plaintiff's choice of fora really is unconstrained. If some of the plaintiff's claims are *exclusively* committed to one forum with limited jurisdiction, she would have to surrender some of her claims by making a choice between the forum with limited jurisdiction and the forum with broader jurisdiction. For example, if state law creates a right and gives a state agency exclusive original jurisdiction over claims relating to that right, pursuit of a claim with the agency does not preclude the subsequent pursuit of related claims based on federal or state rights that could not have been asserted before the agency. *See id.* § 26(1)(c). Because the principles of claim preclusion do not require plaintiffs to make this kind of choice, she may therefore proceed in the forum of limited and exclusive jurisdiction without losing the opportunity to later litigate the claims not within that forum's jurisdictional competency. *Id.* at § 26 cmt. c.

These are the essential principles of the federal common law; but the federal common law does not rely on these principles alone. With respect to the decisions of state tribunals, it includes a principle commanding deference to the state laws of claim preclusion. *See Elliott,* 478 U.S. at 796–99, 106 S.Ct. at 3224–27.[3] This deference arises from the recognition that the state's definition of the claim preclusive effect of the decisions of its tribunals provides some information about the jurisdictional competency of those tribunals. *See Marrese,* 470 U.S. at 388–89, 105 S.Ct. at 1336 (Burger, C.J., concurring). When a state determines that a decision of one of its tribunals will not preclude the litigation of certain claims, the determination conveys, among other things, that the tribunal's ability to decide such claims is limited. *See id.* This sort of information about the jurisdictional competency of state fora facilitates the application of federal claim preclusion rules. But this deference to state law is not unlimited. The federal courts will not decline to hear claims pertaining to federal rights solely on the basis of state *res judicata* principles. The federal common law of claim preclusion will provide an independent basis for decision when state law would unduly inhibit the pursuit of federal rights. *See id.* at 383, 105 S.Ct. at 1333; *see also Gjellum v. City of Birmingham, Ala.,* 829 F.2d 1056, 1064 (11th Cir.1987).

With these principles in mind, we can determine whether Waid's pursuit of a proceeding before the Equal Rights Division will preclude her Title IX claims. Our analysis is simplified by the fact that federal and state law on claim preclusion largely coincide; both place general reliance on the Restatement (Second) of Judgments. *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis.2d 306, 334 N.W.2d 883, 886 (1983). In terms of these principles of claim preclusion, the Equal Rights Division is clearly a forum of limited jurisdiction; it is only competent to hear claims arising under the Fair Employment Act.[4] But this administrative agency also

---

**3.** *Elliott* specifically addressed questions of issue preclusion, but its references to the federal common law of *res judicata* suggest that deference to the state law of preclusion is appropriate for both claim and issue preclusion doctrines.

**4.** Federal law does provide that claims under Title VII should begin their adjudication in a state administrative forum when that forum is competent to rule on state law claims that mirror Title VII claims. 42 U.S.C. § 2000e–5. This

law does not, however, vest the state administrative body with jurisdiction to hear federal claims; the state legislature, not Congress, is the master of a state agency's jurisdiction. The law expresses Congress' intention that the pursuit of Title VII claims should begin with administrative proceedings through the EEOC; and it expresses Congress' determination that state agencies can, in some situations, be the functional equivalent of the EEOC. Therefore, the pursuit of state

provides the only forum for state law claims of employment discrimination. Wisconsin courts have held that the Fair Employment Act does not create a private right of action in court and that all claims under it must be brought with the Equal Rights Division or not at all. *Bachand v. Connecticut Gen. Life Ins. Co.*, 101 Wis.2d 617, 305 N.W.2d 149, 152 (App.1981).[5] Given the Equal Rights Division's exclusive jurisdiction over Waid's state law claims, it is clear that she could not have consolidated all of her claims in a single lawsuit. Therefore, the decision of her state administrative proceeding does not preclude her claims arising under federal law.

2.

■ We now turn to the question of issue preclusion. The Equal Rights Division engaged in factfinding with respect to the question of discrimination, although it did not consider any questions of intent. We must determine whether its factfinding can substitute for factfinding by a district court on this particular issue.

■ According to the Supreme Court, federal courts in a state must give the factfinding of a state agency the same issue preclusive effect to which it would be entitled in the courts of that state. *Elliott*, 478 U.S. at 799, 106 S.Ct. at 3226–27; *see also Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir.1995). This rule applies when an agency acts in a judicial capacity and determines factual questions that are properly before it. *Elliott*, 478 U.S. at 799, 106 S.Ct. at 3226–27. Under the terms of the Fair Employment Act, the Equal Rights Division clearly acted in a judi-

cial capacity in resolving the factual question of discrimination. *See* Wis.Stats. § 111.39. And it is equally clear that this factual issue was well within the agency's province. We are therefore governed by *Elliott's* rule which requires that we give the same issue preclusive effect to the Division's determination as it would receive in Wisconsin's courts.

Wisconsin requires that its courts consider a variety of factors when determining whether to give issue preclusive effect to the unreviewed decision of a state administrative agency. *Lindas v. Cady*, 183 Wis.2d 547, 515 N.W.2d 458, 463 (1994). Those factors include the following: (1) the ability of the party against whom preclusion is sought to obtain judicial review of the decision; (2) differences in the quality or extensiveness of the procedures followed by the agency and the court; (3) differences in the standards of proof required by the agency and the court; (4) policy considerations that would make the application of issue preclusion fundamentally unfair. *See id.*

An evaluation of these factors in this case indicates that the Equal Rights Division's factfinding on the issue of discrimination should preclude relitigation of that issue. MAPS had the opportunity to seek judicial review of the agency's decision, but it declined to do so. In the administrative process, Waid and MAPS both had access to virtually all of the procedural instruments employed for factfinding in courts. Each party was represented by counsel. Before the hearing, they had the opportunity to conduct discovery and subpoena witnesses. During the hearing, they could present exhibits and testimony, and they could cross-

rights against employment discrimination in an administrative forum is sometimes a condition precedent for the federal courts' subject matter jurisdiction over Title VII claims. In this way, federal law seeks to reduce the occasions for adjudicating Title VII rights in federal court by providing that a successful pursuit of rights under a state-law equivalent to Title VII makes the adjudication of Title VII rights unnecessary. *See Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991).

**5.** The Wisconsin Supreme Court has not ruled on this matter, so we are not absolutely bound by the opinion of the *Bachand* court as to the exclusivity of the jurisdiction of the Equal Rights Division. *Baer v. First Options of Chicago, Inc.*, 72

F.3d 1294, 1301 (7th Cir.1995). At one time, district courts in this circuit disagreed about whether the Fair Employment Act created a private right of action. *Compare Shanahan v. WITI–TV, Inc.*, 565 F.Supp. 219 (E.D.Wis.1982) *with McCluney v. Jos. Schlitz Brewing Co.*, 489 F.Supp. 24 (E.D.Wis.1980). Since this controversy, however, some decisions of the Wisconsin Supreme Court on related questions have seemed to resolve this debate in favor of the proposition that there is no private right of action under the statute. *See Johnson v. Wisconsin Pub. Serv. Corp.*, 708 F.Supp. 969, 970 (E.D.Wis.1987); *Mursch v. Van Dorn Co.*, 627 F.Supp. 1310, 1312–14 (W.D.Wis.1986).

examine opposing witnesses, all on the record. Wis.Stats. §§ 111.39(2), 111.39(4)(b). The elements of discrimination and the standard for proving it were essentially the same in the Equal Rights Division as they would be in the district court. *See* Wis.Stats. §§ 111.322(1), 111.36(1)(a). Finally, the policies underlying the creation and enforcement of Waid's state law rights are substantially similar to the policies underlying her rights under Title IX. *See* Wis.Stats. § 111.31. Hence, we conclude that the agency conducted its factfinding about discrimination in roughly the same legal context as the district court would. Given all of these considerations, it would not be unfair to hold MAPS to the factfinding conducted by the Equal Rights Division.

We hasten to point out that Waid has not won her Title IX claim simply by prevailing on the question of issue preclusion. To prove her claim in the district court, Waid must show that MAPS *intentionally* discriminated against her. The decision of the Equal Rights Division precludes relitigation of the question whether MAPS discriminated, but Waid still must prove that MAPS intended to do so.

### III.

With respect to Waid's claims against Wedul and Boettcher, the judgment of the district court is AFFIRMED. With respect to Waid's claim under Title IX, the summary judgment for MAPS is REVERSED and the denial of Waid's partial motion for summary judgment is REVERSED. This case is REMANDED to the district court for further proceedings not inconsistent with this opinion.