**Tana J. WAID, Plaintiff–Appellant,**

v.

**MERRILL AREA PUBLIC SCHOOLS, Defendant–Appellee.**

**No. 96–4113.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1997.

Decided Dec. 3, 1997.

Michael R. Fox, Mary E. Kennelly (argued), Fox & Fox, Madison, WI, for Plaintiff–Appellant.

Linda Stover Isnard, Gilbert J. Berthelsen (argued), Capwell and Berthelsen, Racine, WI, David R. Friedman, Friedman Law Firm, Madison, WI, for Defendant–Appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

This appeal is Act V of a legal drama that began in 1991 and has encompassed an administrative hearing, two sets of proceedings in the district court and a prior appeal to this court. At this juncture, Tana Waid appeals from a jury verdict which found that Merrill Area Public Schools did not intend to discriminate on the basis of Waid's sex when it declined to offer her a permanent teaching position. Puzzling questions of instructions, judicial notice and evidence were presented at trial—in part because they were not anticipated by our earlier opinion. Because we now conclude that the district court erroneously excluded important evidence, we vacate and remand for a new trial.

### I.

While we leave an exhaustive review of the events culminating in Tana Waid's jury trial to our opinion in *Waid I*, 91 F.3d 857 (7th Cir.1996), we will summarize briefly. In the fall of 1990, Merrill Area Public Schools (MAPS) hired Waid as a long-term substitute teacher for its junior high school. Shortly thereafter a member of the faculty died, and Waid assumed most of his responsibilities for the remainder of the school year. The following summer, MAPS sought to permanently replace the deceased teacher. It interviewed several candidates, including Waid, and eventually hired a man.

In July 1991, the parties debuted in Act I when Waid filed a claim with the Equal Rights Division (ERD) of the Wisconsin Department of Industry, Labor and Human Relations. She alleged that MAPS had discriminated against her because of her sex. The agency held a full hearing in March 1994 and found that MAPS had discriminated against Waid in violation of the Wisconsin Fair Employment Act, Wis. Stats. § 111.01, *et seq.* The agency ordered MAPS to give Waid the next available position for which she qualified, as well as back pay from the time of reinstatement and attorney's fees.

Act II began in June 1994, when Waid filed suit in the district court. She claimed that MAPS had violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, which prohibits schools that receive federal funds from intentionally discriminating in employment. Waid also brought claims against the junior high school principal and MAPS' director of curriculum under 42 U.S.C. § 1983. She alleged that the individual defendants, by intentionally discriminating against her under color of state law, had violated rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment. For relief on her claims against the individual defendants and MAPS, Waid sought punitive damages and compensatory damages for pain and suffering. After initial discovery, MAPS and the individual defendants moved for summary judgment on the grounds that issue and claim preclusion barred Waid's suit. Waid similarly moved for partial summary judgment on the ground that issue preclusion prevented the parties from relitigating whether MAPS had discriminated. The district court denied Waid's motion and entered summary judgment for MAPS and the individual defendants.

The curtain rose on Act III when Waid appealed from the district court's ruling. After extended discussion, we affirmed the grant of summary judgment to the individual defendants on Waid's § 1983 claims, *see Waid I*, 91 F.3d at 863, but reversed the grant of summary judgment on her Title IX claim against MAPS. *See id.* at 866. In addition, we held that on remand the district court was to give issue-preclusive effect to the ERD's finding of discrimination. *See id.* at 867. But we hastened to add that Waid had not won her Title IX claim merely by prevailing on the question of issue preclusion. Indeed, we specifically noted that she still had to prove that MAPS *intended* to discriminate. *See id.*

On to Act IV, which provides the grist for the current appeal and was set in the district court following the remand in *Waid I*. In depositions taken in December 1994, the junior high school principal and the director of curriculum offered two primary reasons to explain why Waid was not offered the permanent teaching position: (1) hiring Waid would have been financially disadvantageous, and (2) Waid had difficulty with classroom discipline. Boettcher Dep. at 21, 26; Wedul Dep.

at 20, 39. In the administrative hearing, the ERD had found that these explanations were pretextual.

On remand, Waid asked the district court to take judicial notice of all the findings of fact reached by the ERD. The agency's twelfth factual finding stated:

Waid's gender was a determining factor in MAPS' decision not to hire her for the open position in the summer of 1991. MAPS' claim that Waid's discipline problems were the reason she was not hired is pretextual. MAPS' claim that it was financially disadvantageous to hire Waid is pretextual.

The district court took judicial notice of the ERD's factual findings, except the one quoted above. In addition, the district court informed the parties that they would not be allowed to present any evidence relating to Waid's disciplinary problems or MAPS' financial concerns. The district judge seemed to believe that these twin rulings were the most efficacious means of holding Waid to the task of proving intent while simultaneously giving issue-preclusive effect to the ERD's findings.[1] When the junior high school principal and the director of curriculum explained the hiring decision at trial, they emphasized that the individual MAPS selected for the teaching position had provisional certification for learning-disabled students and was especially skilled at communicating with students and their parents.

Before voir dire, after the jury was sworn and after closing arguments, the district court instructed the jury that MAPS had discriminated against Waid when it refused to hire her and that the jury's role was to determine whether MAPS intended to discriminate. The district court did not give any instruction relating to pretext. After deliberation, the jury returned a special verdict which found that MAPS did not intentionally discriminate against Waid because of her sex. The district court entered judgment in favor of MAPS and denied Waid's motion for a new trial or an amended judgment. We have jurisdiction over Waid's appeal pursuant to 28 U.S.C. § 1291.

Waid argues that the district court erred when it: (1) required Waid to relitigate the issue of intentional discrimination under Title IX; (2) refused to take judicial notice of the ERD's twelfth factual finding; and (3) refused to allow evidence relating to classroom discipline and the financial ramifications of MAPS' hiring decision. Although we reject the first two arguments, we agree that the district court should have allowed evidence pertaining to the explanations that MAPS originally advanced to explain its hiring selection.

## II.

We begin by noting that the district court properly required Waid to litigate the issue of intent. When Waid moved the district court to take judicial notice of the ERD's findings, she argued that because she had brought a disparate-treatment-style claim before the agency,[2] a finding of intent

---

1. In his order denying Waid's motion for a new trial or amended judgment, the district judge explained:

 The Court of Appeals specifically stated, "[I]t would not be unfair to hold MAPS to the factfinding conducted by the Equal Rights Division." The jury was instructed and advised at the voir dire that plaintiff was discriminated against by defendant on the basis of her sex when it denied her a permanent teaching position for the 1991–1992 school year advising: "You are to determine whether or not the discrimination was intentional." Consistent with the remand of the Court of Appeals this Court also precluded defendants from offering any evidence of its claim that plaintiff's "disciplinary problems were the reason she was not hired" and "that it was financially disadvantageous to hire Waid ..." To do otherwise would have precluded a jury from determining "in-

tentional" pursuant to the Appellate Court's mandate.
Order of 112. 2/97, at 3.

2. In a typical disparate treatment claim under Title VII, the plaintiff sets forth a prima facie case that the employer has unlawfully discriminated against the employee. The employer then advances reasons for its action that, if believed by the trier of fact, would support a finding that the employer did not unlawfully discriminate. The plaintiff then attempts to prove that the proffered reasons are pretextual. If the fact finder concludes the reasons are pretextual, she may infer that the employer discriminated against the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). Plaintiffs who bring claims under the Wisconsin Fair Employment Act may utilize this Title VII framework. See Puetz Motor Sales, Inc. v. Labor and Indus. Review Comm'n., 126 Wis.2d 168, 376 N.W.2d 372 (1985).

was implicit in the ERD's ruling. Waid argued that the doctrine of issue preclusion therefore barred relitigation of all issues material to her Title IX claim, including intent. Pl.'s Mot. in Supp. of Judicial Notice at 1. On appeal, Waid explains that if the district court had taken notice of an implicit finding of intent, it could have instructed the jury that Waid had proved intentional discrimination. This argument is not easy to make in light of *Waid I*, but Waid has dismissed as dicta that decision's references to intent.

 It is difficult to imagine a course of action that would run more contrary to *Waid I* than instructing the jury that Waid had proved intent. A lawsuit, like all good drama, requires consistency between acts. "The law of the case doctrine generally binds a court to its own previous decision on issues arising earlier in the litigation as well as to decisions entered by a higher court earlier in the litigation." 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.21[3][b] (3d ed.1997). The "most elementary application" of this doctrine is that when a court of appeals has reversed a final judgment and remanded the case, the district court is required to comply with the express or implied rulings of the appellate court. *Williams v. Commissioner*, 1 F.3d 502, 503 (7th Cir. 1993); *see United States v. Polland*, 56 F.3d 776, 779 (7th Cir.1995); *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir.1991). Such consistency "protects parties 'from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action....'" *Key*, 925 F.2d at 1060 (quoting *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)).

*Waid I* expressly ruled that Waid did not prove intent when she litigated before the ERD. Indeed, we began our discussion of issue preclusion by noting, "The Equal Rights Division engaged in fact finding with respect to the question of discrimination, although it did not consider any questions of intent." 91 F.3d at 866. After we concluded that the ERD's finding of discrimination was issue-preclusive, we hastened to add that Waid had not prevailed automatically on her Title IX claim. We specifically stated: "To prove her claim in the district court, Waid must show that MAPS *intentionally* discriminated against her. The decision of the Equal Rights Division precludes relitigation of the question whether MAPS discriminated, but Waid still must prove that MAPS intended to do so." *Id.* at 867. Thus the district court was wholly correct in refusing to rule that intent had been determined; to find otherwise would have run afoul of the law of the case as set forth in *Waid I*.[3]

### III.

 Waid further argues that even if the district court properly refused to conclude that the ERD considered the issue of intent, the district judge nonetheless should have taken judicial notice of the agency's twelfth finding of fact. That finding states that Waid's sex was a determining factor in MAPS' decision not to hire her, and that MAPS' claims of financial advantages and discipline problems were pretextual. We review a district court's refusal to take judicial notice for abuse of discretion. *See, e.g., York v. American Telephone & Telegraph Co.*, 95 F.3d 948, 958 (10th Cir.1996); *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir.1995).

---

**3.** Although we decline Waid's invitation to revisit our holding in *Waid I*, we note that our decision was based on the general thesis of issue preclusion that only those facts essential to the judgment are precluded. In general, intent is not a necessary element of a successful claim under the Wisconsin Fair Employment Act (or Title VII, on which the Wisconsin statute is modeled). *See Wisconsin Tel. Co. v. Department of Indus., Labor & Human Relations*, 68 Wis.2d 345, 228 N.W.2d 649, 661–62 (1975). But intent is a necessary element of a claim under 42 U.S.C. § 1983 or Title IX, modeled on § 1983. Lex K. Larson, *Employment Discrimination* §§ 102.08[3], 102.09[1] (2d ed.1997). How to apply these general principles to the present facts is certainly arguable, and the parties have reargued the matter here, but the law of the case governs for present purposes. *Cf. Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976) ("We have never held that the constitutional standard for adjudicating claims of invidious ... discrimination is identical to the standards applicable under Title VII, and we decline to do so today."); *Smith v. Metropolitan Sch. Dis. Perry Township*, 128 F.3d 1014, (7th Cir.) (holding that Title VII agency principles do not apply in Title IX cases).

In a conference during the trial, the district judge explained that he was not informing the jury of the ERD's twelfth factual finding because doing so would make obtaining an unbiased verdict difficult. Tr. at 2–11. He had previously noted that a plaintiff can prove intentional discrimination by demonstrating that the defendant has offered a pretextual reason to explain its employment decision. Order of 10/17/96, at 2. The district judge was concerned that taking judicial notice of the ERD's finding would allow the jury without more to infer that MAPS had intentionally discriminated against Waid, in contradiction to *Waid I's* holding that Waid had to prove intent. *Id. Waid I* held that a successful action under the Wisconsin Fair Employment Act is not equivalent to a successful claim under Title IX. The district judge was correctly concerned that the use of judicial notice might encourage the jury to simply convert Waid's victory under the Wisconsin Fair Employment Act into a triumph under Title IX. Hence the district court did not abuse its discretion.

## IV.

■■■ Waid, however, finally prevails on her third argument. In addition to refusing to take judicial notice of the twelfth factual finding, the district court prohibited the parties from introducing evidence relating to the financial advantages of MAPS' hiring decision or Waid's discipline problems. We review this evidentiary ruling for abuse of discretion. This standard of review warrants reversal when a trial judge bases his decision on an error of law. *See Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir.1997). Because the district judge erred in his application of the doctrine of issue preclusion, we find an abuse of discretion. Accordingly, we remand so that evidence of Waid's alleged disciplin-

ary problems and of MAPS' financial concerns may be introduced by either party.

The district judge, in concluding otherwise, apparently reasoned that the parties had already litigated before the ERD whether these explanations were pretextual and were therefore precluded from relitigating the issue before the jury.[4] But the parties were not precluded from litigating the issue of intent; indeed, that was the specific mandate of *Waid I*. While one could quibble about whether a showing of pretext specifically goes toward proving the employer's intent or, alternatively, to the fact of discrimination, the events of this case have illustrated that separating the concept of intentional discrimination into discrete pieces is a difficult undertaking. Hence we decline to find that a demonstration of pretext goes only toward intent or only toward discrimination. Instead, we simply note that it is almost unarguable that pretext is relevant to a claim of intentional discrimination. *See, e.g., Jiles v. Ingram*, 944 F.2d 409, 413 (8th Cir.1991) (affirming dismissal of § 1983 claim of intentional discrimination because district judge had accepted the non-racially motivated explanation for an employee's discharge); *Sorlucco v. New York City Police Dep't*, 888 F.2d 4, 7 (2nd Cir.1989) (noting that in a claim for intentional discrimination arising under § 1983 "plaintiff must ultimately show that the apparently valid reason the defendant has advanced for discharging the plaintiff ... was a coverup for a discriminatory decision"); *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982) (finding that in the absence of direct evidence of intentional discrimination, pretext is relevant in a § 1983 claim). To the extent that a showing of pretext is relevant to the issue of intent, the ERD's findings did not

---

4. At trial, Waid's counsel requested that the district judge clarify the evidence she would be permitted to introduce:

> Counsel: I understand the Court's ruling to be that those issues that have already been litigated such as the use of discipline as an excuse is something that under the ... current ruling I should not be going into because it's already been the subject of a finding.
> The Court: That's correct.
> Counsel: Okay. And the reason I'm asking it, Judge, is because the ripsaw ... I find myself in is because traditionally one would prove

intentional discrimination by showing that a pretextual reason was proffered.
> The Court: I'm well aware of that....
> * * *
> The Court: You don't have that opportunity anymore.
> ...
> Counsel: I don't have that opportunity in this case, right?
> The Court: You are restricted as is the defendant.
> Tr. at 2–15.

preclude the opportunity to demonstrate that MAPS' alleged disciplinary and financial concerns were pretextual; under *Waid I*, the ERD did not have to consider issues of intent.

On appeal, MAPS defends its judgment by arguing that there was a "level playing field" at trial because it was precluded from introducing evidence that hiring Waid was financially disadvantageous or that she had difficulty with discipline. Whatever merit this argument may have as a practical matter, it nonetheless strikes us as a bit disingenuous. When a showing of pretext encourages the fact finder to find discriminatory intent, it does so because the fact finder, upon learning that an employer has manufactured reasons for a hiring decision, is more inclined to draw negative inferences about the employer's true motivation. Thus, when MAPS' explanations for its decision were taken off the table altogether, Waid lost the benefit of the inferences the jury may have drawn if it found pretext.

Because Waid was deprived of an opportunity to demonstrate pretext, we remand for another trial on the issue of intent. Thus Act VI will take place in the district court. In the hope of forestalling Act VII, we caution Waid that our ruling does not mean that she can introduce evidence that the ERD found pretext or that MAPS offered the ERD different reasons for its hiring decision than it advanced at the first trial. For the purpose of proving the narrow issue of intent, what occurred at the ERD in regard to pretext is not applicable. *See Waid I*, 91 F.3d at 866–67. While we note that the district court's ruling prevented MAPS from arguing about classroom discipline or the financial advantages of its decision, we leave to the district judge's sound discretion the degree to which Waid is able to argue that MAPS advanced different explanations at the first trial than in its depositions. The district judge may also determine whether a jury instruction on pretext is appropriate in light of the evidence that will be tendered at the new trial. Therefore we VACATE the judgment and REMAND to the district court

for proceedings not inconsistent with this opinion.