134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Laila EL-MARAZKU, Plaintiff-Appellant,
v.
UNIVERSITY OF WISCONSIN SYSTEM BOARD OF REGENTS and David
Larbalestier, Defendants-Appellees.
 No. 97-2069.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 16, 1997
Decided Jan. 8, 1998
 
 Before ESCHBACH, Circuit Judge FLAUM, Circuit Judge EVANS, Circuit Judges.
 
 ORDER
 
 1
 In the spring of 1995. Laila El-Marazki ("Marazki") was laid-off from her job of assistant scientist at the University of Wisconsin Engineering Department's Applied Superconductivity Center ("ASC"). Marazki, who attributes the loss of her job to gender and national origin discrimination, filed a lawsuit pursuant to 42 U.S.C. §§ 1981 and 1983 and Title IX of the Education Amendments of 1972. 42 U.S.C. §§ 1681-1688, against the University of Wisconsin System Board of Regents ("University of Wisconsin") and David Larbalestier, the director of the ASC. The district court granted summary judgment in favor of the defendants. Marazki appeals this determination on grounds that genuine issues of material fact remain in dispute.
 
 
 2
 Marazki is an Egyptian woman who earned her Ph.D from the University of Wisconsin in 1981. In 1987, Marazki was hired, along with her husband (who was also a scientist), by the University of Wisconsin to work as an assistant scientist in the ASC. The actual hiring was done by Dr. Roger Boom, the director of the ASC When Dr. Boom retired in 1991 or 1992 (the parties dispute the actual date), David Larbalestier assumed Dr. Boom's position as director of the ASC. Because the ASC is completely funded by outside research contracts, grants, and awards, all scientific staff salaries are contingent upon the continued influx of outside funding.
 
 
 3
 Marazki was hired specifically to work with Dr. Boom on the superconductive magnetic energy storage project, a distinct research project within the ASC funded by large defense contractors and committed to developing a power source for ground-based lasers. Marazki was the only female scientist working on this project. In the late 1980's, the project's purpose largely was vitiated by the Department of Defense's decision to eliminate ground-based lasers from its strategic Defense Initiative. As a result, funding for the project mostly disappeared and the project's staff was cut back. In January of 1992, Associate Dean of Research Greg Moses, Dr. Boom's replacement as supervisor of the magnetic energy storage group, issued lay-off notices to three scientists: Marazki, Marazki's husband, and Mostafa Abdelsalam. Shortly after Marazki's lay-off, the ASC hired a white male scientist named Bob Witt. Marazki's lay-off lasted just three months, however, as additional funds were received from the Department of Defense and she was reinstated.
 
 
 4
 In or around 1992, Dr. Boom requested that Marazki be promoted from assistant scientist to associate scientist. Dean Moses found Marazki's publications and research achievements to be inadequate, however, and therefore denied the promotion. In 1993, Marazki received a below average pay increase. When she complained. Larbalestier and Abdelsalam told her that her raise was related to her meager publication record.
 
 
 5
 In 1994, Larbalestier developed a uniform, formalized evaluation process for the staff scientists Consequently, all scientists on the ASC staff submitted annual summaries of their publications, presentations, and contributions to the scientific community, which were then reviewed and rated by "principal investigators," or project leaders, within the ASC. The ratings provided the basis for determining wage increases In both 1994 and 1995, Marazki received average to below average evaluations based on the fact that her publication record and overall productivity were below that of her peers and of a lesser quality than expected of a scientist with ten years' post doctoral experience In 1994, while most scientists received a rating of three or higher out of five, Marazki and one male scientist received a rating of two.
 
 
 6
 In 1995, Marazki approached Larbalestier about doing friction testing research under contract with the Massachusetts Institute of Technology or the Lawrence Livermore National Laboratory. Larbalestier supported her possible participation in this project. Instead of following school protocol by submitting a draft proposal and budget to her department administrator, however, Marazki faxed a proposed budget directly to Lawrence Livermore. Marazki's proposed budget contained numerous miscalculations that caused her to underestimate the total cost of her research by tens of thousands of dollars Moreover, as the research completion date of September 30, 1995 neared, it became clear that Marazki would be unable to finish her research in time. Ultimately, the project had to be amended to cover ten additional months of research
 
 
 7
 In June of 1995, funding for the magnetic energy storage project dried up and lay-off notices were again issued to the staff of that project, including Marazki. However, because Marazki had committed herself to finishing the friction research, her lay-off was extended until the completion of that work. Marazki then repeatedly expressed uncertainty as to her ability even to finish the work. Ultimately, Lawrence Livermore agreed to pay Marazki a full-time salary even though she worked only part-time, and Marazki was able to finish the project in June of 1996. At that time, her lay-off became effective and she was terminated from the University of Wisconsin.
 
 
 8
 Marazki filed this suit on June 28, 1996, alleging that she had been discriminated against in the terms and conditions of her employment by the University of Wisconsin and its agent, David Larbalestier, on account of her race and national origin in violation of Title IX, 42 U. § C. §§ 1981 and 1983. (Marazki later abandoned the § 1981 claim). More specifically, Marazki claimed that she was repeatedly laid-off, denied promotions and salary increases, and generally treated in an inferior manner on account of her gender and Egyptian descent. The defendants filed a motion for summary judgment in which they argued that Marazki failed to establish a prima facie case of gender or national origin discrimination because she failed to show that similarly situated men, or similarly situated non-Egyptians, were treated more favorably. Alternatively, the defendants argued that Marazki failed to rebut their legitimate, non-discriminatory reasons for treating her as they did. Those reasons are: (1) the loss of funding, and (2) her failure to publish as much as her peers and attain a level of accomplishment expected of a scientist with her amount of experience.
 
 
 9
 The district court agreed. Applying Title VII analysis to Marazki's Title IX claims, the court concluded that her claims lacked merit because she offered no evidence supporting an inference that the defendants' proffered reasons for treating her as they did were pretextual. The court also dismissed Marazki's § 1983 claim to the extent it overlapped with her Title IX sex discrimination allegations and then dismissed the remainder of the § 1983 claim on grounds that she failed to make out a prima facie case of national origin discrimination Marazki appeals two aspects of the district court's determination: (1) the finding that no genuine issues of material fact exist as to whether she was laid-off in 1992 because of her gender, and (2) the finding that no genuine issues of material fact exist as to whether she was given poor evaluations in 1994 and 1995 because of her gender.
 
 
 10
 Marazki first contends that the district court erred in concluding that she failed to rebut the defendants' justification for laying her off in 1992. This court reviews the grant of summary judgment de novo, viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. J. Doe, and H. Doe v. City of Bellevile, Illinois, 119 F.3d 563, 568 (7th Cir.1997).
 
 
 11
 Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). In analyzing Title IX claims. courts are divided as to whether the analysis of Title VII or Title VI applies. In Smith v. Metropolitan School Dist. Perry Township, No 95-3818, 1997 WL 656772, * 8 (7th Cir. Oct. 22, 1997), however, this court looked to Title VII for assistance in determining whether sexual harassment was "severe and pervasive enough to constitute illegal discrimination on the basis of sex for purposes of Title IX." Accordingly, it is reasonable to apply Title VII caselaw to Marazki's Title IX claims.
 
 
 12
 To prove sexual discrimination under Title VII, a plaintiff may rely on direct evidence showing that she was treated less favorably by her employer because of her sex, or she may employ the indirect, burden-shifting method set forth in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973); Cheek v. Peabody Coal Co., 97 F.3d 200, 203 (7th Cir.1996). Under the latter approach, the plaintiff must first make out a prima facie case of sex discrimination by showing that (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action, and (4) her employer treated similarly situated males more favorably. Cheek, 97 F.3d at 204; see also Coco v. Elmwood Care, Inc., No. 97-1697, 1997 WL 695406, * 2 (7th Cir. Nov. 10.1997). Once the plaintiff establishes the existence of a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate. non-discriminatory reason for the actions it took against the plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993), McDonnell Douglas, 411 U.S. at 802. If the defendant makes this showing, the burden returns to the plaintiff to show that the defendant's actions were not legitimate or were undertaken for reasons other than those proffered. Kaniff v. Allstate Insurance Co., 121 F.3d 258, 263 (7th Cir1997); Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir.1996) A plaintiff can establish pretext directly by showing "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir.1991) (citations omitted).
 
 
 13
 Here, Marazki maintains that her 1992 lay-off, when viewed "in light of the totality of the conduct directed toward her at the center," provides enough evidence of sexual discrimination to render summary judgment inappropriate. More specifically, Marazki argues that the court failed to consider the fact that only two males scientists (her husband and Mostafa Abdelsalam) also received lay-off notices. Mostafa Abdelsalam, she argues, was never really laid-off because he "never left the pay-roll" As for her husband, Marazki believes that he was laid-off because he was terminally ill. Accordingly. Marazki believes that her own lay-off was not due to a loss of funding but due to gender discrimination stemming from her superiors' belief that she should stay home and care for her dying husband.
 
 
 14
 The problem with Marazki's argument is that she concedes other male scientists were laid-off at the same time. Even assuming as true Marazki's argument that Abdelsalam was never terminated from the pay-roll, the record shows that at least one similarly situated male, her husband, also was laid-off because of lack of funding and not, as she maintains, because of his illness. Therefore, as noted by the district court, Marazki cannot establish a prima facie case that her lay-off was motivated by gender discrimination. See Johnson v. University of Wisconsin -Eau Claire. 70 F.3d 469, 478 (7th Cir1995).
 
 
 15
 In addition, Marazki cannot establish that the reason proffered by the defendants for her 1992 lay-off--lack of funding--was pretextual. It is undisputed that Marazki's job was supported entirely by contract funds derived from outside sources. The defendants contended that it was the loss of this funding that necessitated the lay-off of three scientists, including Marazki, whose research was peripheral to those portions of the magnetic energy storage project contract most likely to be extended. See Weisbrot v. Medical College of Wisconsin, 79 F.3d 677 (7th Cir, 1996) (affirming summary judgment where the plaintiff failed to rebut the employer's proffered reason for dismissal--the discontinuation of funding). Under the indirect method of proof, once the defendants offered this legitimate, non-discriminatory reason for laying her off, the burden shifted to Marazki to show that some other reason actually motivated the lay-off This Marazki is unable to do. Although she mentions that another male, Bob Witt, was hired during the lay-off period, she offers no evidence indicating that Mr. Witt was in fact a replacement or that money that could have paid her salary was used instead to pay Mr. Witt's salary.
 
 
 16
 Marazki also maintains that the defendants' failure to articulate why they chose to lay her off, as opposed to someone else. gives rise to an inference that "someone thought it was best that she be with her husband and not at work." This argument does not raise an inference of discrimination, however, because Marazki provides no evidence supporting her theory that someone else should have been laid-off instead The defendants explained that Marazki was laid-off because funding disappeared and they considered her research to be peripheral to those portions of the magnetic energy storage project most likely to be extended. In order to rebut this explanation, Marazki needed to provide contrary evidence indicating, for instance, that her research was central to the project and that others were more expendable. See Von Zuckerstein v. Argonne National Laboratory, 984 F.32 1467. 1475 (7th Cir.1993). Having neglected to do so, Marazki fails to raise the inference that her lay-off was pretextual, and this court will not act as a " 'super-personnel department' and decide if [a] firing was unwise or unjustified." Anderson v. Stauffer Chem. Co., 965 F.2d 397. 403 (7th Cir1992) (citations omitted).
 
 
 17
 Marazki's second argument on appeal concerns the district court's determination that she failed to refute the defendants' legitimate, non-discriminatory reasons for giving her below-average evaluations in 1994 and 1995 The defendants asserted that all scientists were evaluated pursuant to the same procedures and that Marazki's low scores stemmed directly from her failure to publish as much as her peers and her failure to perform on a level akin to other scientists with ten years of post-doctorate experience. Marazki contends that she did, in fact, refute those reasons with evidence that the district court ignored. namely: (1) the obvious gender bias Larbalestier directed against her beginning in 1992. and (2) the subjective and inconsistent quality of the review process.
 
 
 18
 Marazki's argument that Larbalestier harbored a long-standing animosity against her that resulted in unfair evaluations is without merit. Marazki's appellate brief is devoid of examples supporting this claim except for a single remark by Larbalestier, made in February of 1994, in which he said "you are a mother and have two kids to raise, and we have this problem with [another woman scientist] too" This sole remark is insufficient to support a finding that the defendants sexually harassed Marazki. See Bahl v. Royal Indemnity Co., 115 F.3d 1283, 1293 (7th Cir.1997) (noting that "isolated, 'stray workplace remarks' that are not clearly linked to the decision to terminate [Marazki's] employment" cannot support a claim of national origin discrimination). Even when taking into account Larbalestier's behavior towards Marazki between 1992 and 1995, there is no evidence permitting a reasonable jury to conclude that Larbalestier harbored a long-standing bias against Marazki that resulted in poor evaluations. For instance, while the record shows that Larbalestier harbored concerns about Marazki's abilities, including her failure to publish as much as her peers, there is no evidence that his concerns were motivated by discriminatory animus. In fact, Marazki concedes that a scientist's publication record is an important measure of his or her performance within the scientific community. And while Larbalestier encouraged Marazki to seek other employment, the record indicates that he encouraged male scientists to do the same because research funds were disappearing, not because he wanted to rid the engineering department of all female scientists.
 
 
 19
 Marazki's argument that the evaluation process was arbitrary and capricious likewise is without merit. The defendants' proffered reason for giving Marazki low evaluation scores was her failure to publish as much as her peers and achieve a level of success within the scientific community expected of someone with her level of experience. Marazki cannot refute these reasons by arguing that the evaluation system lacked a defined rating system and that the review committee lacked the ability to truly evaluate her work. Because all the scientists in the ASC were evaluated according to the same procedures. the extent of the rating system's definition and the degree to which the committee members were personally aware of each scientist's daily work are not indicative of whether the evaluation system was unfairly applied in a discriminatory fashion. See Vitug v. Multistate Tax Comm'n, 88 F 3d 506, 515 (7th Cir.1996) (noting that evidence of an interview process's unreliability is not evidence that the process had a disproportionately negative effect on members of a protected group).
 
 
 20
 Moreover, Marazki provides no evidence refuting the reasons given for her low evaluation scores. While Marazki may believe that one's publication record is a subjective criteria that varies depending on the kind of research involved. subjective preferences do not suggest discriminatory intent unless they express forbidden preferences. Senner v. Northcentral Technical College, 113 F.3d 750, 757 (7th Cir.1997). See also Vitug, 88 F 3d at 515 ("Demonstrating that an interview process is influenced by subjective factors does not go any distance toward proving that [the plaintiff's] religion or national origin were among those subjective factors."). Here, there is no evidence that the publication criterion was applied in a discriminatory fashion--for instance, by expecting her to publish more than her male peers.
 
 
 21
 The fact that Marazki received favorable feedback at other times does not create the inference that her unfavorable evaluations were the product of discriminatory intent. While aspects of Marazki's work may indeed have been good, the record indicates that the defendants treated publication output seriously and repeatedly told Marazki that her lack of publications would adversely affect her evaluations. The fact that they warned Marazki of her shortcomings in this area actually supports the conclusion that they truly believed the reason proffered for giving her low scores. See Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir.1997). In addition, it is not for this court to decide whether the use of the publication criterion, as opposed to a different criterion, was wise, fair, or correct. Id. at 1271-72.
 
 
 22
 The district court's opinion, which was rendered on April 3, 1997, disposed of Marazki's Title IX claim as to both the University of Wisconsin and Larbalestier. The court then prohibited her from bringing a sex discrimination claim under § 1983 on grounds that she could not use a single set of facts to bring causes of action under both § 1983 and Title IX. Waid v. Merrill Area Public Schools, 91 F.3d 857, 862 (7th Cir.1996). On October 22, 1997, however, this court decided Smith v. Metropolitan School, holding that a Title IX claim can be brought only against a grant recipient--meaning an educational institution receiving federal financial assistance--and not an individual In so ruling, the Seventh Circuit joined the majority of other circuits which likewise have concluded that only an educational program or activity receiving federal financial assistance may be sued under Title IX.1997 WL 656772 at * 3-4 (citing cases). In light of Smith's directive prohibiting Title IX claims against individuals, we will permit Marazki's gender claims against Larbalestier to proceed under § 1983.
 
 
 23
 This court has not defined precisely "[t]he parameters of a cause of action alleging sexual harassment as a violation of the equal protection clause.... We have noted, however, that such a claim generally follows the contours of a Title VII allegation of sexual harassment." Trautvetter v. Quick, 916 F.2d 1140, 1149 (7th Cir,1990). An important distinction between Title VII and equal protection under § 1983, however, is that while both causes of action require evidence of sexual harassment or discrimination, the latter cause of action requires evidence of intent to discriminate. Id. Thus, a plaintiff wishing to sustain an equal protection claim of discrimination must show both disparate treatment and an intent to discriminate based on the plaintiff's membership in a particular class of citizens--i.e., male or female. Id., see also Sims v. Mulcahy, 902 F.2d 539 (7th Cir.1990) ("for [a plaintiff] to demonstrate a prima facie case of [sexual] discrimination under the equal protection clause, she must not only establish that she was treated differently, but she must also establish that the 'defendants acted with discriminatory intent.' ").
 
 
 24
 Marazki's claim of intentional gender discrimination under § 1983 is subject to the same McDonnell Douglas burden-shifting analysis as her Title VII claim. King v. Board of Regents of the University of Wisconsin System, 898 F 2d 533.537 (7th Cir.1990) Applying this test, Marazki fails even to demonstrate the existence of a prima facie case. While Marazki can show that she is a member of a protected class, she cannot established either that Larbalestier treated her differently from similarly situated male scientists or that he intentionally discriminated against her because of her gender. Forrester v. White, 846 F.2d 29, 32 (7th Cir.1988). Moreover, as discussed at length above, even if Marazki were able to make out a prima facie case, she is unable to refute the reasons given by the defendants for their actions
 
 
 25
 The judgment of the district court is AFFIRMED