Liz FRECHEL–RODRIGUEZ, et al., Plaintiffs,

v.

**PUERTO RICO DEPARTMENT OF EDUCATION, et al., Defendants.**

**Civil No. 06–1095 (JAF).**

United States District Court, D. Puerto Rico.

March 22, 2007.

Edelmiro Antonio Salas–Gonzalez, URB. Villa Nevarez, San Juan, PR, Javier Quinones–Rosado, Toa Baja, PR, for Plaintiffs.

Idza Diaz–Rivera, Francisco A. Ojeda–Diez, Joy C. Vilardi–Rizzuto, P.R. Department of Justice, Lavinia Aparicio–Lopez,

Commonwealth Department of Justice, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs Liz Frechel–Rodríguez ("Liz") and her daughter Shelsey Villalobos–Frechel ("Shelsey") bring the present action against Defendants the Puerto Rico Department of Education ("DOE"), Lilliam Maldonado, the principal of Shelsey's elementary school, and Angel Gabriel Morales–Sánchez, a custodian at Shelsey's elementary school, alleging violations of Title IX, 20 U.S.C. §§ 1681 et seq. (2000 & Supp.2006), 42 U.S.C. § 1983 (2003 & Supp.2006), and Commonwealth law. *Docket Document No. 1.* Plaintiffs, who allege that Shelsey was sexually harassed by Morales–Sánchez, a janitor at her grade school, seek the following relief: (1) an injunction ordering the DOE to take measures to adequately protect children from being sexually harassed by Morales–Sánchez or any other person in the school district; (2) $200,000 as compensatory damages for the emotional pain and suffering inflicted upon Shelsey as a result of the alleged incident; (3) $100,000 as compensatory damages for the pain and suffering inflicted upon Liz as a result of the alleged incident; (4) punitive damages to punish the DOE's and Maldonado's deliberate indifference to warnings they received about Morales–Sánchez' conduct; and (5) reasonable attorneys' fees, expert witness fees, and other expenses. *Id.*

Defendants DOE and Maldonado move for judgment on the pleadings.[1] *Docket Document No. 35.* Plaintiffs oppose the motion. *Docket Document No. 36.*

### I.

### Factual and Procedural Synopsis

We derive the following factual summary from Plaintiffs' complaint. *Docket Document No. 1.*

Morales–Sánchez has been a janitor at John F. Kennedy Elementary School ("JFK Elementary") in Levittown, Puerto Rico, since at least 2003, which is when the students' parents first began to complain to Maldonado that Morales–Sánchez sexually harassed kindergarten students. Parents complained that Morales–Sánchez would, inter alia, visit the kindergarten, sit students in his lap, and rub them against his genitals. The DOE and Maldonado allegedly did nothing to address these complaints and prevent the sexual harassment from reoccurring.

Shelsey attended kindergarten at JFK Elementary from August 2004 until May 2005. On February 4, 2005, while Shelsey was waiting to be picked up from school by her mother, Morales–Sánchez allegedly lifted her skirt with the intention of looking at her underwear ("the incident").

Liz reported the incident to local police, who in turn filed criminal charges against Morales–Sánchez on February 19, 2005.[2] In March 2005, Liz also reported the incident to Maldonado. During that meeting, Maldonado told Liz first, that she would transfer Morales–Sánchez to another section of the school so that he would have no further contact with the kindergarteners,

---

1. Because Morales–Sánchez does not join in this motion, his status as a defendant to this litigation will not be addressed in this opinion and order. Any and all references to "Defendants" will hereinafter be understood to refer only to the Defendants who have filed the present motion, i.e., the DOE and Maldonado.

2. It is unclear what these criminal charges are from Plaintiffs' complaint, although Plaintiffs tell the court that they are not sexual molestation charges. *Docket Document No. 1.*

and second, that she would write to the DOE to inform them of the incident. According to Plaintiffs, however, Maldonado did neither of the things she promised, and Morales–Sánchez continued to be allowed near the kindergarteners, which caused Shelsey great distress.

Sometime after Liz reported Morales–Sánchez to the local police and to Maldonado, Morales–Sánchez filed charges against Liz with the local police, accusing her of disturbing the peace. Plaintiffs allege that the charges that Morales–Sánchez leveled against Liz are false and are in retaliation for her having complained to local police and school authorities about the incident.

Liz transferred Shelsey out of JFK Elementary, and to another school in the district, in August 2005.

Plaintiffs filed the present complaint on January 24, 2006. *Docket Document No. 1.* Defendant DOE filed its answer on March 20, 2006, *Docket Document No. 14,* and Defendants Maldonado and Morales–Sánchez filed their answer jointly on May 3, 2006. *Docket Document No. 20.*

Defendants DOE and Maldonado filed the present Rule 12(c) motion seeking judgment on the pleadings on August 28, 2006. *Docket Document No. 35.* Plaintiffs filed an opposition to the motion later that same day. *Docket Document No. 36.*

## II.

### *Rule 12(c) Standard*

Rule 12(c) of the Federal Rules of Civil Procedure allows any party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c)(1992 & Supp.2004). Despite the difference in timing between Rule 12(c) motions for judgment on the pleadings, which are brought after the pleadings are closed, and Rule 12(b) motions to dismiss, which are brought before the pleadings are closed, "[t]he standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." *Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza,* No. 05–1430, 2007 WL 613719, at *13 (1st Cir.2007)(quotations and citations omitted).

"Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." *Feliciano v. Rhode Island,* 160 F.3d 780, 788(1st Cir.1998). "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *R.G. Fin. Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir.2006). "There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." *Id.*

## III.

### *Analysis*

We begin by clarifying what we believe are the federal claims in this litigation. Plaintiffs' complaint invokes Title IX and Section 1983 without explaining which Defendants are the subject of each claim. Because we will liberally construe Plaintiffs' complaint, we will assume that Plaintiffs' Title IX and § 1983 claims have been brought against all three Defendants, and analyze each claim in turn.

## A. Title IX Claims

### 1. Defendants Maldonado and Morales–Sánchez

■ Defendants argue that there is no individual liability under Title IX, and that Plaintiffs' claims under this statute must, therefore, be dismissed to the extent that they are brought against Maldonado. *Docket Document No. 35.* Although Morales–Sánchez did not join the DOE and Maldonado in filing the instant motion, it is clear that this argument applies equally to the Title IX charges brought against him and we will, therefore, treat it as such.

In *Lipsett v. University of Puerto Rico,* the First Circuit noted that the Supreme Court had authorized private Title IX actions against an educational institution itself, but not individuals either in their personal or official capacities. 864 F.2d 881(1st Cir.1988)("[T]he separate liability of ... supervisory officials ... must be established, if at all, under Section 1983, rather than under Title IX."). As a result, the *Lipsett* court refused to allow individual liability for sexual harassment of a student in an educational facility under Title IX. *Id.; see also Smith v. Metro. Sch. Dist. Perry Twp.,* 128 F.3d 1014, 1019–20 (7th Cir.1997) (agreeing with *Lipsett* that a Title IX claim can not be brought against an individual and dismissing a Title IX claim against a school principal). *Lipsett,* therefore, requires that Plaintiffs' Title IX claims against Maldonado and Morales–Sánchez be dismissed.

### 2. Defendant DOE

■ Defendants also argue for the dismissal of Plaintiffs' Title IX claims against the DOE, alleging that the DOE is protected from having to defend against such suits by sovereign immunity. *Docket Document No. 35.* The Eleventh Amendment of the United States Constitution indeed states that the "[j]udicial power of the United States shall not be construed to extend to any suit ... commenced or prosecuted against one of the ... States by citizens of another State," U.S. CONST., amend. XI, and the Supreme Court has ruled that "an unconsenting State is immune from federal-court suits brought by its own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 679 n. 2, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Eleventh Amendment sovereign immunity applies to Puerto Rico, *Fernandez v. Chardon,* 681 F.2d 42, 59 n. 13 (1st Cir.1982), and the First Circuit has frequently assumed that this sovereign immunity extends to Puerto Rico's DOE, too. *Diaz–Fonseca v. Puerto Rico,* 451 F.3d 13, 34 (1st Cir.2006); *Fernandez,* 681 F.2d at 59.

■ Despite the fact that the DOE is generally regarded as protected from federal lawsuits by sovereign immunity, however, Plaintiffs correctly aver that this does not matter in the present case because Congress has waived States' sovereign immunity rights in the context of Title IX lawsuits. *Docket Document No. 36.* Congress abrogated the States' sovereign immunity to Title IX actions in the Rehabilitation Act Amendments of 1986, which provide, inter alia, that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of ... Title IX of the Education Amendments of 1972 ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d–7 (2003 & Supp.2006); *see also Franks v. Ky. Sch. for the Deaf,* 956 F.Supp. 741, 750–51 (E.D.Ky.1996) (holding that Congress could constitutionally abrogate the States' Eleventh Amendment immunity in the context of Title IX claims because Title IX was promulgated pursu-

ant to the Fourteenth Amendment). Therefore, we will not dismiss Plaintiffs' Title IX claims against Defendant DOE.

## B. *Section 1983 Claims*

"Section 1983 provides a private right of action against state actors—that is, public officials acting under color of state law—who deprive individuals of rights confirmed by federal constitutional or statutory law." *Camilo–Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir.1999). As we established in the introduction to our analysis, we consider Plaintiffs to have pleaded § 1983 claims against the DOE, Maldonado, and Morales–Sánchez, alleging that each of these Defendants have deprived Shelsey of her rights under Title IX.

■ Plaintiffs bring to this court's attention the fact that their § 1983 claims predicated on alleged Title IX violations are, in some circuits, categorically impermissible under the theory that Title IX provides a comprehensive remedial scheme to address sex discrimination in education. *Docket Document No. 36.* In making this argument, Plaintiffs cite to what is known as the *Sea Clammers* doctrine. *Id.* (citing *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). The doctrine, which derives from a Supreme Court case of the same name, holds "that if the remedial devices [in a statute such as Title IX] are 'sufficiently comprehensive,' they may provide evidence that Congress intended to preclude suit under § 1983 to redress violations of that statute." *Crawford v. Davis*, 109 F.3d 1281, 1283–84 (8th Cir.1997)(citing *Sea Clammers*, 453 U.S. at 20, 101 S.Ct. 2615).

Although the First Circuit has never addressed whether, under the *Sea Clammers* doctrine, Title IX provides sufficiently—comprehensive remedies such that a plaintiff may not file § 1983 claims based on Title IX violations, many other circuits have, and their opinions are split.

The Sixth and Eighth Circuits have held that plaintiffs may bring § 1983 suits predicated on Title IX violations because Title IX does not provide "sufficiently comprehensive" remedies as the *Sea Clammers* doctrine would require to preclude the § 1983 suits.[3] *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir.1997); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir.1996). In finding that Title IX does not provide plaintiffs with "sufficiently comprehensive" remedies to enforce their statutory rights, these courts focused on the fact that Congress did not "expressly authorize a private right of action and that the only enforcement mechanism expressly provided for [in Title IX] was a procedure for the termination of federal financial support for institutions violating [the statute]." *Lillard*, 76 F.3d at 723 (citing *Cannon*, 441 U.S. at 683, 99 S.Ct. 1946); *see also Crawford*, 109 F.3d at 1284 ("The only enforcement mechanism Title IX expressly provides is a procedure to terminate federal support to institutions that violate Title IX.").

The Second, Third, and Seventh Circuits, by contrast, have held that plaintiffs may not, under the *Sea Clammers* doctrine, bring § 1983 suits predicated on alleged Title IX violations. *Bruneau v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 756–57 (2nd Cir.1998); *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 863 (7th

---

**3.** Plaintiffs claim that the Tenth Circuit has also held that Title IX precludes Title IX-based § 1983 actions in *Seamons v. Snow,* but upon reading that case we understand it to mean something quite different, which is that in certain circumstances, Title IX precludes § 1983 claims predicated on alleged *constitutional* violations. 84 F.3d 1226, 1233–34 (10th Cir.1996).

Cir.1996); *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779 (3d Cir.1990). These courts point to the fact that the Supreme Court, in *Cannon,* ruled that Congress implicitly authorized a private right of action under Title IX to hold "that Title IX contains a sufficiently comprehensive enforcement scheme so as to foreclose the use of § 1983 to implement its provisions." *Bruneau,* 163 F.3d at 756 (citing *Cannon v. Univ. of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); *see also Waid,* 91 F.3d at 861 ("Title IX also provide[s] a private right of action and extensive remedies.").

We agree with the Second, Third, and Seventh Circuits that the *Sea Clammers* doctrine bars § 1983 suits predicated on Title IX violations and, accordingly, dismiss all of Plaintiffs' § 1983 claims against DOE, Maldonado, and Morales–Sánchez. If, as the Sixth and Eighth Circuit believe, Title IX did not provide "sufficiently comprehensive" remedies when it was enacted, because it did not expressly create a private right of action, then we feel that the problem was cured when the Supreme Court held in *Cannon* that Title IX implicitly grants plaintiffs, like the Plaintiffs in this case, such private right of action. *Cannon,* 441 U.S. at 709, 99 S.Ct. 1946. In other words, we do not believe that the comprehensiveness of Title IX's remedial scheme depends on whether Congress' creation of a private cause of action under Title IX was explicit or implicit, but rather whether Congress created a private right of action at all, which the Supreme Court has held that it did. *Id.*

Having dismissed Plaintiffs' Title IX claims against Maldonado and Morales–Sánchez, *supra, Section III.A,* we realize that Plaintiffs may feel that Title IX does not provide, as we have just held, "sufficiently comprehensive" remedies because its private right of action cannot be leveled against individuals. The Seventh Circuit addressed such concerns in *Waid* by explaining that,

> [b]y enacting Title IX, Congress created a strong incentive for schools to adopt policies that protect federal civil rights. If educational institutions do not adequately safeguard the civil rights of their students and employees, Title IX provides that they may lose the funds supplied by a myriad of federal agencies. The creation of this incentive indicates that Congress intended to place the burden of compliance with civil rights laws on educational institutions, not on the individual officials associated with those institutions.

91 F.3d at 862–63 (concluding that plaintiff's Title IX claim against school district preempted claims she had against individual officials).

### C. *Availability of Injunctive Relief*

■ Although the First Circuit has stated its belief that Title IX injunctive relief is available to a plaintiff under the proper circumstances, *Cohen v. Brown Univ.,* 101 F.3d 155, 167 (1st Cir.1996), we are only able to grant Plaintiffs such relief in the present case if, inter alia, they have the necessary standing to request it. The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The first of these elements is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. (quotations and citations omitted). The second standing element is that the injury must be "fairly traceable to the challenged action of the defendant," and the third element is that it must be likely that the

injury will be "redressed by a favorable decision." *Id.*

■ Defendants first challenge Plaintiffs' standing to seek injunctive relief in this case by pointing out that Shelsey transferred to a new elementary school in August 2005, months before this litigation was filed, such that Shelsey does not suffer any imminent threat of sexual harassment that any injunction could serve to redress. *Docket Document No. 35.* We somewhat understand Defendants' skepticism that Plaintiffs have properly pleaded the first element of standing under *Lujan*—imminent threat of injury—given that Plaintiffs plainly state that Shelsey no longer attends the school where Morales–Sánchez works. *Docket Document No. 1.* Even still, we refuse to hold that Liz' temporary transfer of her daughter to a safer school during the pendency of this dispute, a logical decision should the allegations in this litigation be true, means that Plaintiffs are now ineligible to request the injunctive relief that may enable Shelsey to one day return to JFK Elementary.

We think that our ruling today is in line with the First Circuit's decision in *Dubois v. U.S. Dep't of Agriculture,* which affirmed an individual citizen's standing to challenge the legality of the government's issuance of a permit for expansion of a skiing facility in a national forest that the person wanted to continue to visit. 102 F.3d 1273 (1st Cir.1996). In *Dubois,* the plaintiff had a history of visiting the national forest in question and, had the skiing facility grown as planned, would have been injured by not being able to go back. *Id.* at 1283. The First Circuit held that this was a sufficient articulation of the plaintiff's injury for the lawsuit to proceed. *Id.*

We similarly feel that Shelsey's history in attending JFK Elementary, her presumed desire to resume attending classes there given its proximity to her home, and her alleged inability to safely return to the school at this time, satisfies the injury-in-fact requirement necessary to establish standing.

■ However, we agree with Defendants that Plaintiffs do not have standing to bring a claim for injunctive relief for the benefit of other JFK Elementary students. *Docket Document No. 35.* "[A]s a general rule, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Dubois,* 102 F.3d at 1281 (citing *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)(quotations omitted)). Plaintiffs do not argue that any exceptions to this general rule apply in the present case, and so, for the purposes of this litigation, we conclude that we are only empowered to "redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth,* 422 U.S. at 499, 95 S.Ct. 2197. "[W]hen the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Id.*

In sum, we deny Defendants' motion to dismiss Plaintiffs' petition for injunctive relief under Title IX insofar as Plaintiffs seek to redress Shelsey's personal injury, but grant Defendants' motion to dismiss the Title IX injunctive claims insofar as they seek to redress the injuries of third parties.

### D. *Availability of Punitive Damages*

■ Defendants finally argue that Plaintiffs' request for punitive damages under Title IX must be dismissed. *Docket Document No. 35.* We agree. Although the First Circuit has not yet discussed the

issue, we base our decision on the Fourth Circuit's ruling in *Mercer v. Duke University,* where the court, observing that Title IX was patterned after Title VI, concluded that the unavailability of punitive damages under Title VI "compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX" either. No. 01–1512, 50 Fed.Appx. 643, 644 (4th Cir. Nov.15, 2002)(citing *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002)).

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendants' motion to dismiss Plaintiffs' Title IX claims against Maldonado and MoralesSánchez; we **DENY** Defendants' motion to dismiss Plaintiffs' Title IX claim against the DOE; we **GRANT** Defendants' motion to dismiss all of Plaintiffs' § 1983 claims brought against Defendants DOE, Maldonado, and Morales–Sánchez; we **DENY** Defendants' motion to dismiss Plaintiffs' request for injunctive relief under Title IX against Defendants DOE, Maldonado, and Morales–Sánchez insofar as the petition seeks to redress Shelsey's personal injury; we **GRANT** Defendants' motion to dismiss Plaintiffs' request for injunctive relief under Title IX insofar as the petition seeks to redress the injuries of third parties; and we **GRANT** Defendants' motion to dismiss Plaintiffs' request for punitive damages. *Docket Document No. 35.*

Because Plaintiffs' federal Title IX claim against Defendant DOE remains in this litigation, we shall continue to exercise supplemental jurisdiction over Plaintiffs' claims under Puerto Rico law.

**IT IS SO ORDERED.**